## No. 16,983.

PACIFIC EMPLOYERS INSURANCE COMPANY ET AL.
*v.* INDUSTRIAL COMMISSION ET AL.
(257 P. [2d] 404)

Decided April 20, 1953.   Rehearing denied May 11, 1953.

Messrs. WOLVINGTON & WORMWOOD, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAW-RENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission.

Messrs. WOOD & RIS, for defendant in error Harris.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

PACIFIC EMPLOYERS INSURANCE COMPANY and Colorado Milling and Elevator Company seek a review of the judgment of the district court affirming the award of the Industrial Commision in favor of defendant in error Lawson J. Harris.

The claim for compensation was filed by Harris on June 11, 1952, in which he alleged that on May 15, 1951, he sustained injuries as the result of an accident arising out of and in the course of his employment. In the statement of claim it is specified that "Injury was to my back. Also hemorrhoids."

The claim for compensation was, as we have said, filed with the Industrial Commission on June 11, 1952, whereupon, on June 13, 1952, the claim was set for hearing before a referee of the Industrial Commission on June 30, 1952, and notice thereof served upon all parties. At the request of claimant's attorney, the hearing date was postponed until July 9, 1952, on which day the hearing proceeded.

As the result of the hearing before a referee of the Industrial Commission, the referee found:

"The claimant sustained an accident arising out of and in the course of his employment on May 15, 1951, when he fell from a ladder, lighting on both buttocks. He left work July 17, 1951. The claimant had previously

sustained a ruptured intervertebral disc in an accident which occurred October 6, 1947, while in the employ of the same employer. Compensation on account of that injury was denied because claim for compensation was not filed within the proper time.

"The Referee finds that the accident of May 15, 1951 aggravated the pre-existing injury and resulted in claimant's temporary total disability. The accident of May 15, 1951 also caused hemorrhoids, for which the claimant was operated. Since the accident of May 15, 1951, claimant has been paid wages on the basis of forty hours per week during his periods of inability to work. He left work July 17, 1951, and returned to work September 15, 1951; was off work November 1, 1951 to March 12, 1952; was again disabled from May 14, 1952 to June 9, 1952 and since June 19, 1952 has been totally disabled. His age is 52 years. His average weekly wage was $70.76.

"Compensation having been paid for disability prior to June 19, 1952, by way of payment of full wages."

The referee awarded compensation at the rate of $28.00 per week during the period of claimant's temporary total disability, together with an allowance for medical, surgical and hospital expenses in a sum not to exceed $1000.00. The supplemental award of the referee, from which the above quotation is taken, was regularly approved and adopted by the Industrial Commission.

It should be noted that the accident resulting in injuries for which claimant seeks an award occurred on May 15, 1951, and the claim for compensation was filed on June 11, 1952, being approximately thirteen months after the accident. It is the contention of the plaintiffs in error on this review that the Industrial Commission was without jurisdiction to make any award because of claimant's failure to comply with the provisions of section 1, chapter 238, S.L. Colo. 1941, the part of which pertinent to the question here is: "The right to compensation and benefits, as provided by this Act, shall

be barred unless within six months after the injury, or within one year after death resulting therefrom, a notice claiming compensation shall be filed with the Commission. This limitation shall not apply to any claimant to whom *compensation has been paid,* or where it is established to the satisfaction of the Commission within two years after the injury or death that a reasonable excuse exists for the failure to file such notice claiming compensation, and the employer's rights have not been prejudiced thereby, and the furnishing of medical, surgical or hospital treatment by the employer shall not be considered payment of compensation or benefits within the meaning of this section."

Plaintiffs' argument is presented under three subheads which, it is contended, require us to set aside the judgment of the district court and order the cause remanded to the Industrial Commission because: 1. The claim for compensation was barred by the statute of limitations; 2. the evidence does not support the finding and award of the Industrial Commission, and, 3. the findings of the Industrial Commission in a former case is res judicata of the present claim and claimant is estopped from now claiming compensation for aggravation of a previous injury.

The only proposition advanced which we deem necessary for determination here is whether the claim for compensation is barred by the statute of limitations. If so, plaintiffs in error are entitled to relief; otherwise not. We approach this question fully cognizant of the fact that if the claim is supported by competent evidence or by reasonable inferences to be drawn therefrom, the findings of the Commission will not be disturbed. In order to determine whether there is competent evidence in the record to support the claim or whether there are reasonable inferences to be drawn therefrom to support the findings of the Commission, it will be necessary for us to set forth the factual situation as presented by the record.

The record discloses that claimant sustained injuries in an accident arising out of and in the course of his employment on November 8, 1947, while in the employ of one of the plaintiffs in error here. The accident resulted in a ruptured intervertebral disc, but no claim for compensation therefor was filed with the Industrial Commission. On January 25, 1952, claimant filed a petition to reopen his claim based on that accident. A hearing was held on February 15, 1952, and the referee of the Commission, on March 21, 1952, entered an order denying compensation because the claim was barred by limitation. The Commission held it was without jurisdiction to reopen the case or make any determination thereof. To this order or finding of the referee no petition to review was filed by claimant.

On June 11, 1952, Harris filed a claim for compensation alleging that he had sustained injuries from an accident occurring on May 15, 1951, which accident aggravated the injury sustained in the November 8, 1947, accident. It is apparent that nearly thirteen months had elapsed between the accident and the filing of the claim, and, unless the employer had paid compensation to the claimant for the disability arising out of the May 15, 1951, accident, the limitation provision of section 1, chapter 238, supra, precludes a recovery.

Claimant was the only witness testifying to any payments whatever made to him by his employer during the periods when he was allegedly disabled by reason of the injuries incurred in the May 15, 1951, accident. His testimony with reference to these payments was that his "wage rate" was $1.38 per hour; his workday was eight hours, and he was employed "All the time six and most of the time seven [days]" per week, and for all work performed over forty hours per week he was paid "time and a half." The record discloses the following questions and answers: "Q. When you were in the hospital in July of 1951 [for hemorrhoid operation] did you have occasion *to receive information from*

*anyone concerning compensation?.* A. At the time I was in the hospital when I came out of the hospital, the day I came to pay my bill, *the Sister told me it would be taken care of by compensation."* (Italics ours.)

To this evidence an objection was interposed, and it was admitted "as part of the events leading up to the filing of the claim. Q. While you were in the hospital and during your July and August disability did you receive any payments from Colorado Milling and Elevator Company? A. Yes, sir. Q. *What was your understanding concerning those payments?"* (Italics ours.) To this question an objection was interposed and overruled, and witness' answer was: "A. At the time I was hurt and I went to the hospital *I was told I would get forty hours a week.* Q. Pay? A. Pay, yes, sir, and my —to my knowledge, I knew that forty hours was more than what the $21.75 that they would pay me. Q. You mean $21.75 under compensation? A. That's right, *so I thought the company was just making that up, finishing out the amount of the check.* Q. *Then did anyone purportedly from the Pacific Employers Insurance Company come to you in the hospital at any time?* A. Yes, sir, there was a man there one day. * * * Q. Did *he* tell you anything about compensation or medical expense? A. The only thing he said was 'You won't have to worry; you'll be taken care of.' * * * Q. Now, did I understand you to say the day you left the hospital some Sister told you the hospital bill would be taken care of by compensation? A. Yes, sir. Q. Who was that sister? A. The Sister in the office. I don't know her name. * * * Q. Then when you found it hadn't been paid you found out why they hadn't paid it? A. Yes, sir. Q. *That the insurance company was denying liability?* A. I didn't find out until I talked to Mr. Ris about it. Q. *No one from the insurance company told you they were going to pay that, did they?* A. *No, no one but the Sister told me anything like that.* Q. As a matter of fact, *your employer had paid you various times*

*you had been off, full time?* A. *Yes, sir.* Q. *Even before this July of 1951?* A. *He has paid me for forty hours, yes, sir.* Q. Over the years, whenever you were off, he would pay you. A. *There is time when he wouldn't, no. Since that first fall there has been several times I have lost, for a week, two or three days or about a week at a time.*

\* \* \*

"Q. You never at any time received any compensation check from the Pacific Employers Insurance Company for any of your cases, have you? A. Only through the company. Q. You were never told by them it was compensation, were you? A. The only thing the company has ever told me, they told me that it would be taken care of, and when I signed that blue slip I thought that was a compensation receipt. \* \* \* Q. But you have never received any compensation payment at any time in any of your occurrences or accidents, whatever you want to call them, from the Pacific Employers Insurance Company, have you? \* \* \* A. I have never received a check or anything that said anything about the Pacific Employers. Q. Any pay you ever got at any time, any money, was from your employer on their regular pay checks, wasn't it? A. Yes, sir." (Italics ours.)

The witness was asked to describe the man whom he had seen in the hospital who claimed to represent the insurance carrier, but he was unable to give a description of him except a meager one. He then was asked: "Q. And you say he said you wouldn't have to worry, everything would be taken care of? A. He got up and shook hands and said, 'Mr. Harris, you won't have to worry, you will be taken care of.' Q. But you don't know who that was? You don't know his name? A. I can't remember his name, no sir. All I remember, he said he was from the Pacific Employers, \* \* \*."

Claimant testified, and the referee found, that, " \* \* \* Since the accident of May 15, 1951, claimant has been

paid wages on the basis of forty hours per week during his periods of inability to work. He left work July 17, 1951 and returned to work September 15, 1951; was off work November 1, 1951 to March 12, 1952; was again disabled from May 14, 1952 to June 9, 1952 and since June 19, 1952 has been totally disabled. * * * His average weekly wage was $70.76.

"Compensation having been paid for disability prior to June 19, 1952, by way of payment of full wages."

The referee and Commission, as well as the trial judge, found from the quoted testimony of claimant that the statute of limitations (section 1, chapter 238, supra) was tolled because the payments hereinbefore mentioned as made to claimant were compensation paid to him.

It should be observed that the uncontradicted testimony of claimant is that when disabled he was paid on the basis of a forty-hour week at an hourly wage of $1.38, which would amount to $55.20 per week. There is no support in the record for the finding that by this payment claimant was receiving "full wages" for by the finding and award it was determined that claimant's average weekly wage was $70.76. Claimant's testimony definitely established that he worked forty-eight hours per week all of the time and most of the time fifty-six hours per week. Consequently, there is no evidence in the record to support the finding that his average weekly wage was $70.76. There is no direct evidence that the payments made to claimant were intended as compensation, and if reasonable inferences from the testimony support the Commission's findings that the payments were compensation, then, as we have said, the findings and award must be supported. In this connection it is well to remember that the only evidence in the record with reference to the payments and the purpose for which they were made come from the claimant himself who, in answer to a question, said that when he went to the hospital on July 15, 1951, "I was told I would get forty hours a week" and that this was to be pay and

that he knew that forty hours was more than the $21.75 they (the Commission) would pay him under compensation. He testified that he thought the company was making that up ($55.20), finishing out the amount of the check. This testimony clearly indicates that claimant thought that his compensation would be $21.75 and that his employer was voluntarily adding $33.45 to his weekly pay check. The other evidence in the record with reference to compensation was that when claimant inquired about his hospital bill a Sister at the hospital told him that it would be taken care of by compensation. The only other time that compensation was mentioned, according to claimant, is when an unidentified person came to the hospital, claiming to be a representative of the employer's insurance carrier, and is said to have stated to claimant that "You won't have to worry; you'll be taken care of." Do the reasonable inferences from this testimony justify a finding and award that compensation has been paid claimant and the statute of limitations thereby tolled?

In this case it appears that the employer was carrying compensation insurance for its protection and the protection of its employees, and if claimant had a compensable injury and filed his claim therefor within the time provided by statute, the employer was relieved of all financial burdens respecting his injured employee. It became the primary obligation of the insurance carrier to pay any compensation which the Industrial Commission should determine to be due; also, prior to May 15, 1951, and during claimant's employment, his employer had paid him wages when absent from duty, and here the employer, according to the record, paid claimant $55.20 per week when he was absent from duty allegedly by reason of injuries received in the accident of May 15, 1951. According to the Commission's award, claimant would have been entitled, if his injury was compensable and his claim filed timely, to "compensation in the sum of $28.00 per week." Notwithstanding

which his employer paid him, as he testified, $27.20, more than the Industrial Commission would have found him entitled to under the provisions of the Workmen's Compensation Act. Claimant had been denied compensation on March 21, 1952, because of his failure to file his claim therefor within the statutory period, and yet in the claim arising out of the May 15, 1951, accident, no claim for compensation was filed by claimant until almost thirteen months thereafter, and, according to the record, weekly payments to claimant ceased. There is no evidence in the record justifying the Commission in finding and determining that the weekly wage paid claimant was compensation for any injury for which no claim had then been filed. For us to hold that claimant's testimony that when he went to the hospital he was told by some undisclosed person that he would get "forty hours a week"; or that when the Sister told him that his hospital bill would be taken care of by compensation; or that when some unknown person approached claimant at the hospital and told him not to worry, that he would be well taken care of, is competent evidence would be travesty. It is not, in the least, strengthened by claimant's statement that he thought that it was compensation augmented by the benevolence of his employer.

The employer, actuated by sympathy, benevolence, gratitude or appreciation of claimant's services during more than five years, may have considered it proper to continue his pay while he was absent from work and before any claim was made for compensation; and before the Industrial Commission had any notice whatever of a claimed injury, for the record discloses that the claim for compensation was not filed with the Industrial Commission until June 11, 1952. In order that the payment of wages during the absence of an employee may be held to be the payment of compensation under the Workmen's Compensation Act, it must be established by competent evidence or reasonable infer-

ences to be drawn therefrom that in making these payments the employer was doing so conscious of the fact that he was making the same as compensation, and it must be received by the employee with the knowledge or reasonable grounds for assuming that the payments made to him were being made as compensation for his injuries. The payment of wages to an employee while disabled, and particularly before he has filed any claim for compensation, does not, *ipso facto,* establish the payment of compensation tolling the statute of limitations provided in the Workmen's Compensation Act.

We have read and carefully considered our opinions in *Comerford v. Carr,* 86 Colo. 590, 284 Pac. 121; *Morrow v. Industrial Commission,* 98 Colo. 348, 56 P. (2d) 35; and *Sommers v. Borgmann,* 111 Colo. 552, 144 P. (2d) 554, all of which involve the tolling of the statute of limitations in workmen's compensation cases and justify the assumption that the payment of wages to an employee whose injuries were incurred in an accident arising out of and in the course of his employment was sufficient in itself to establish the payment of compensation to the injured employee. We have concluded that the payment of wages under these circumstances does not of itself establish the payment of compensation and that in so holding we were in error. In so far as these decisions of our court are in conflict with the decisions herein, they are expressly overruled.

■ ■ When the evidence in workmen's compensation cases, as disclosed by the record in the present proceeding, is undisputed and without substantial conflict, we may properly draw our own conclusions therefrom and enter a judgment accordingly, notwithstanding the findings and award of the Commission may be to the contrary. *Industrial Commission v. Betz,* 111 Colo. 401, 142 P. (2d) 389. In the instant case there is no competent evidence in the record to support the findings and award of the Industrial Commission; all the evidence with reference to compensation was incompetent.

This being true, no reasonable inferences can be drawn therefrom. Considering the record, we are convinced that the Industrial Commission erred in holding that in the instant case the statute of limitations was tolled. We appreciate the fact that the Industrial Commission, as well as the district court, followed decisions of this court which now have been expressly overruled.

It is our judgment that the district court erred in affirming the award and findings of the Industrial Commission, and the cause is remanded to the district court with instructions to return it to the Industrial Commission with directions to set aside its findings and award and deny claimant's claim for compensation upon the ground that the same was not filed within the time provided by statute, and such payments as are revealed in this record do not constitute compensation tolling the statute of limitations.